## Stoner *against* Stroman.

A *scire facias* will not lie against the personal representative of a deceased defendant in a joint judgment, although it may be suggested in the writ that a surviving defendant in the same judgment is utterly insolvent.

ERROR to the Common Pleas of *York* county.

The Commonwealth of Pennsylvania for the use of the administrator of Christian Stoner, deceased, against Peter Ahl, administrator of John Stroman, deceased. This was a *scire facias* upon a judgment, and the question presented was raised by a general demurrer to the writ, which was as follows :

*York County, ss.* — The Commonwealth of Pennsylvania to the sheriff of York county, greeting :

Whereas, the Commonwealth of Pennsylvania, heretofore, to wit, in August Term, in the year 1824, in our Court of Common Pleas of said county, and by the judgment of the same court, recovered against Martin Gardner, David Gardner, George Spangler and John Stroman, a certain debt of $7000, and also the sum of $13.09 for said Commonwealth's damages, which said Commonwealth had sustained, as well by reason of the detention of said debt, as well as for costs and charges by said Commonwealth in the suit in that behalf expended, whereof said Martin Gardner, David Gardner, George Spangler and John Stroman were convicted, as by the record and proceedings thereof remaining in the same court may appear; which said judgment so recovered against said Martin Gardner, David Gardner, George Spangler and John Stroman, as aforesaid, was had and obtained upon a certain writing obligatory, bearing date the 25th day of March, in the year 1818, and sealed with the seals of said Martin Gardner, David Gardner, George Spangler and John Stroman, whereby they became held and bound unto said Commonwealth in said sum of $7000, to be paid to said Commonwealth when they should

[Stoner v. Stroman.]

be thereunto afterwards requested, with and under a certain condition to said writing obligatory subscribed, whereby it was declared that if said Martin Gardner and David Gardner, the administrators of all and singular the goods, chattels and credits of Martin Gardner, the elder, late of Hellam township, deceased, should make or cause to be made a true and perfect inventory of all and singular the goods, chattels and credits of the said deceased, which had or should come to the hands, possession or knowledge of them, the said Martin Gardner and David Gardner, or into the hands and possession of any other person or persons for them, and the same so made did exhibit or caused to be exhibited into the Register's office, in the county of York, at or before the 25th day of April then next ensuing; and the same goods, chattels and credits, and all other the goods, chattels and credits of the said deceased, at the time of his death, which at any time after should come to the hands or possession of the said Martin Gardner and David Gardner, or into the hands and possession of any person or persons for them, did well and truly administer according to law: and further did make or cause to be made a true and just account of their said administration at or before the 25th day of March, in the year 1819, and all the rest and residue of said goods, chattels and credits, which shall be found remaining upon said administration account, the same being first examined and allowed of by the Orphans' Court of the county of York, should deliver and pay unto such person or persons respectively as said Orphans' Court by their decree and sentence, pursuant to the true intent and meaning of the law now in force in this Commonwealth should limit and appoint: and if it should thereafter appear that any last will and testament was made by said deceased, and the executor or executors therein named, did exhibit the same into said Register's office, making request to have allowed and approved accordingly, if the said Martin Gardner and David Gardner, being thereunto required, did surrender and deliver the said letters of administration, approbation of such last will and testament being first had and made in said Register's office, then the said obligation was to be void and of none effect, or else to be and remain in full force and virtue. And whereas said Commonwealth of Pennsylvania for the use of Henry Stoner and Daniel Dietz, administrators of Christian Stoner, deceased, hath suggested a certain breach in the said condition of the said writing obligatory, to wit, that said Martin Gardner and David Gardner, administrators as aforesaid of said Martin Gardner, the elder, deceased, did not well and truly administer according to law the said goods, chattels and credits of said Martin Gardner, the elder, deceased, at the time of his death, which came to the hands and possession of them the said Martin Gardner and David Gardner, administrators as aforesaid of said Martin Gardner, the elder, deceased, in this, that said Henry Stoner and Daniel Dietz, admi-

nistrators as aforesaid, in the term of November, in the year 1841, in our said Court of Common Pleas of York county, and by the judgment of said court, recovered against said David Gardner, who survived said Martin Gardner, administrator of said Martin Gardner, the elder, deceased, for the proper debt of said Martin Gardner, the elder, deceased, as well a certain debt of $749.21 as also $44.17$\frac{1}{2}$, which in and by the same court were then and there adjudged to said Henry Stoner and Daniel Dietz, administrators of said Christian Stoner, deceased, as aforesaid, for the damages sustained by the detention of said debt, as for their costs and charges, by them in their suit in that behalf expended, whereof said David Gardner, surviving administrator of said Martin Gardner, the elder, deceased, was convicted, as by the record and proceedings thereof remaining in the same court may appear, which said judgment and record remain in full force and effect : and thereupon afterwards, that is to say, in the Term of January 1842, it was considered, in and by the same court, that said Henry Stoner and Daniel Dietz, administrators of said Christian Stoner, deceased, should have execution against said David Gardner, surviving administrator of said Martin Gardner, the elder, deceased, to be levied of the goods and chattels which were of said Martin Gardner, the elder, deceased, at the time of his death, in the hands of said David Gardner, surviving administrator of said Martin Gardner, the elder, deceased, to be administered, as by the record and proceedings thereof remaining in the same court more fully appears; and said Commonwealth for the use aforesaid, in fact says, that at the time of the award of said execution as aforesaid, to wit, on the 18th day of December, in the year 1841, at York county aforesaid, divers goods and chattels, which were of said Martin Gardner, the elder, deceased, at the time of his death, of great value, to wit, of the value of the debt and damages last aforesaid, had come to the hands of said David Gardner, administrator as aforesaid, to be administered, and which said goods and chattels, said David Gardner, administrator as aforesaid, afterwards, to wit, on the day and year last aforesaid, at York county aforesaid, eloigned, wasted and converted to his own use : and said Commonwealth, for the use aforesaid, further says that said David Gardner and said John Stroman survived said Martin Gardner and said George Spangler, they, the said Martin Gardner and George Spangler, having died since the date of said writing obligatory, and said John Stroman has died since the death of said Martin Gardner and George Spangler, and said David Gardner survives said John Stroman, and is insolvent; and that said suit to August Term 1824, was not prosecuted by nor at the instance of said Christian Stoner, nor his administrators, but by another creditor. And by said breach of the aforesaid condition of said writing obligatory, said Commonwealth for the use aforesaid, says that said Henry Stoner and Daniel Dietz, administrators as afore-

[Stoner v. Stroman.]

said of said Christian Stoner, deceased, have been aggrieved and sustained damage, to wit, the sum of $7000, and for the same said Commonwealth for the use aforesaid, hath besought us to provide a proper remedy; and we being willing that what is just in this behalf should be done, according to the form of the Act in such case made and provided, do command you that by honest and lawful men of your bailiwick, you summon Peter Ahl, administrator of said John Stroman, deceased, to appear before our Judges at York, at our Court of Common Pleas, to be held on the first Monday of April next, to show cause why execution should not issue on said first mentioned judgment, so obtained as aforesaid in August Term, in the year 1824, to be levied of the goods and chattels of said John Stroman, deceased, in the hands of him the said Peter Ahl, administrator as aforesaid, to be administered, for the damages to be assessed by reason of the said breach of said writing obligatory, if it shall seem expedient to said Peter Ahl, administrator as aforesaid, so to do, and further to do and receive what our said court shall then and there consider of him in this behalf. And have you then and there this writ. Witness, the Honourable DANIEL DURKEE, at York, the 6th day of January 1845.

The court below, (DURKEE, President), rendered a judgment on the demurrer for the defendant.

*Hambly*, for plaintiff in error, in support of the writ, cited 1 *Binn.* 123; 7 *Serg. & Rawle* 354; 6 *Serg. & Rawle* 266.

*Fisher* and *Mayer*, contra, cited 6 *Serg. & Rawle* 266; 8 *Serg. & Rawle* 457; 16 *Serg. & Rawle* 416; 4 *Watts* 325; 2 *Watts* 110; 1 *Watts* 437; 8 *Watts* 159.

The opinion of the Court was delivered by

KENNEDY, J.—It cannot be questioned that the judgment obtained against the obligors in an action brought against them jointly on the bond in 1824, as recited in the *scire facias* sued out in this case against the personal representatives of John Stroman, a surety in the bond, who has died since the judgment, leaving David Gardner only, one of the principals named in the bond, surviving, and who still survives, merged the bond so that no subsequent action against the obligors, either jointly or severally, could be maintained thereon, and judgment had against them in it. *Higgens' case*, (6 *Co.* 44); *Putt* v. *Rawstern*, (*Pollex.* 641); *Cro. Jac.* 73; *Brown* v. *Wootton*; *quia transit in rem judicatam*; 2 *Ventris* 348. This being the case, it is therefore clear that a person for whose benefit the bond may have been originally taken, must be confined to the judgment, and proceed by writ of *scire facias* upon it for redress, if he has been injured by the conduct or neglect of the principal or principals in the bond. This, in-

[Stoner v. Stroman.]

deed, would seem to be the course which is directed to be pursued in suing and proceeding afterwards upon administrators' bonds by the fifteenth section of the Act of the 27th of March 1713, entitled " An Act for establishing Orphans' Courts," 1 *Smith L.* 81. And hence it is, if there be a judgment against two, and one die, a *scire facias* lies against the *other alone,* reciting the death; and he cannot plead that the heir of him that is dead has assets by descent, and demand judgment if he ought to be charged alone; for, at common law, the charge upon the judgment being personal survived; and the statute of *Westm.* 2. 13 *Ed. I. c.* 45, that gives the *elegit,* does not take away the remedy of the plaintiff at the common law, and therefore the party may take out his execution which way he pleases, for the words of the statute are *sit in electione.* But if he should, after the allowance of this writ and revival of the judgment, take out an *elegit* to charge the land, the party may have remedy by suggestion, or *audita querela.* 5 *Bac. Abr. Tit. " Obligations,"* p. 165 (*Wilson's ed.*), and the cases there cited. Also *Sergeant Williams' note* (4) in *Underhill* v. *Devereux,* (2 *Saund.* 72, *h.* 72, *i.*) In this same note, page 72, *n,* Sergeant Williams lays it down, that where there are several defendants, and one of them dies before execution, since the charge upon the judgment survives as to the personalty, though not to the realty, as we have already shown, the plaintiff may have a *scire facias* framed upon the special matter, namely, against the survivor, to show cause why the plaintiff should not have execution against him of his goods and chattels, and of the moiety of his lands; and against the heir and terre-tenants of the deceased, to show why the plaintiff should not have execution of a moiety of the lands of the deceased, without mentioning any goods; for which he cites Chief Justice HOLT, in *Paxton* v. *Hall,* (*Carth.* 107.) In which case it was held by the court that the *scire facias* ought to be joint against the survivor and the heir and terre-tenants of the deceased defendant, when the plaintiff intended to charge the land, and would not lie against the heir and terre-tenants alone of the deceased defendant. And according to the doctrine laid down above, it was held by this Court, in *The Commonwealth for the use of Bellas* v. *Miller's Administrators,* that a *scire facias* to revive a judgment against the administrator of a joint defendant therein, who died first, could not be supported; for, as it was said by the Court, it is clear law that a plaintiff who has recovered against a number can have execution only against the survivors, the goods of those who have died being discharged. And in *The Commonwealth for the use of Huston* v. *Mateer,* (16 *Serg. & Rawle* 416,) where a judgment had been obtained upon an administration bond against three jointly, one of whom died after judgment, it was ruled that, as the judgment bound their real estate, a *scire facias* would lie against the survivors and the executors of the deceased; not, however, to charge

the personal estate of the deceased, but the real estate merely, in regard to which the terre-tenants might come in and defend, as it was said; but now, since the passage of the Act of the 24th of February 1834, requiring the widow, heirs or devisees, and the guardians of such as are minors, to be made parties, where the plaintiff intends to charge the real estate of a deceased, it may perhaps be indispensably necessary to make them parties to the *scire facias*, according to the 34th section of the Act.

But the object of the proceeding in the present case is to charge the personal estate of the deceased defendant in the judgment, if not the real estate also, without any regard to the survivor in the judgment; and with this view the *scire facias* has been sued out against the administrator, the personal representative of John Stroman, the deceased, alone, alleging as a reason for looking to his estate generally for the recovery of the debt demanded, that David Gardner, the only survivor in the judgment, is insolvent. But it appears, also, from the plaintiff's own showing in the *scire facias*, that the deceased John Stroman was a surety merely in the bond upon which the judgment was obtained, and that the judgment was obtained in an action brought on it against him and the obligors therein named jointly. And it also further appears by the plaintiff's showing in the *scire facias*, that the judgment upon which the *scire facias* is founded was not obtained in a suit brought by him on the bond, for or on account of any neglect or refusal on the part of the principals therein, being the administrators of Martin Gardner the elder, deceased, to pay the debt demanded in this suit, but instituted by another person, claiming to be a creditor of the said Martin Gardner the elder. The circumstance that the original suit was brought by a third person for his exclusive benefit, without any advice or direction on the part of the present plaintiff, was introduced into the *scire facias*, I presume, for the purpose of showing that he ought not to be bound by the judgment as a joint judgment against the obligors in the bond, but have the right, if more advantageous to him, of considering it as a judgment against each severally. It has, at least, been made the ground of an argument to this effect. To admit and sanction such position, however, would be to overturn the settled rule of law in that behalf, which allows the party who has a right to sue upon such bond, executed by several persons binding themselves jointly and severally, either *to sue* them jointly or severally at his election: but having made his election by suing them jointly in one and the same writ, and having obtained a joint judgment against all, he is thereby concluded, and cannot afterwards proceed against them severally. The character of the judgment being thus fixed, becomes irrevocable, unless it can be reversed for error. And it must of necessity belong to the person who first sues upon the bond, that has a right to do so, to elect and determine whether the obligors shall be sued

[Stoner v. Stroman.]

jointly or severally; for it may be that he is the only person in being at the time who has a right to sue; or if there be others, he may not know them, or any thing of their claims; and it is their own neglect that they do not sue first, if they had the right to do so.   But the original suit, in which the judgment was had, was brought as long ago as August 1824, upwards of twenty years before the suing out of the *scire facias* by the present plaintiff, which was not returnable in the court below until the first Monday of April 1845.   Although the judgment, when obtained, may have bound the real estate of John Stroman, the intestate of the defendant, if he had any, yet, as it does not appear that any means were used to preserve and continue the lien of it longer than five years, when, by the Act of Assembly passed in that behalf, it would have expired, that may possibly be the reason why the plaintiff did not pursue the usual, and, indeed, the only approved course, as it would seem, by suing out a writ of *scire facias* against the survivor, and the widow, heirs, devisees or terre-tenants of the deceased, so as to charge the real estate of the deceased, if there were any bound by it at the time of his death.   Though it is admitted that this is the usual as well as the correct course generally, yet it is claimed that the insolvency of the surviving defendant in the judgment furnishes good ground for an exception to such general course.   It is not necessary to decide whether, if John Stroman had been a principal in the bond on which the judgment was had, and had participated in the benefits which were expected to be derived from the administration of the estate of Martin Gardner the elder, his personal representatives could be properly called on for payment of the debt in question or not; for, as he was only a surety, and could derive no possible advantage from the giving of the bond, it is clear that his death discharged his personal estate from all liability to the judgment.

   This principle is established by the decision of this Court in *Weaver et al.* v. *Shryock, executor of Brotherton,* (6 *Serg. & Rawle* 262.)   There it was held that by the death of the surety, the principal being still in full life, who had executed a joint bond with the principal, the debt survived as well in equity as at law against the survivor, and that no suit could be maintained against the executor of the surety for the recovery of a balance of the debt which remained unpaid by the principal, who had become insolvent.   It is true the case just cited was a case of a joint bond, where the charge upon it was merely personal; but it has been shown by the authorities already cited, that the charge upon a judgment at common law is also merely personal, and therefore survives against the surviving defendant in a joint judgment, the same as against a surviving joint obligor in a joint bond.   The *Statute of Westm.* 2, 13 *Ed.* 1, *c.* 45, does not alter or change the common law in this respect; it only gives the plaintiff in the judgment a remedy by writ of *elegit* against the lands of the survivor

[*Stoner v. Stroman.*]

and the deceased, but not against the goods or personal estate of the latter. And even as regards the real estate, the plaintiff is not at liberty, as it would seem, to proceed against the lands of the deceased alone; and hence the *scire facias* sued out with a view to charge the lands of the deceased defendant must also be against the survivor as well as the terre-tenants of the lands of the deceased bound by the judgment. For it seems that where the *lands* of several are charged jointly with a debt, it shall not lie wholly upon the survivor; as in the case of a recognizance binding the lands of the recognizors. See *Sergeant Williams's Note* (4), 2 *Saund.* 51. But it is otherwise in the case of a bond given by two, where one dies before judgment : there the survivor shall be charged alone. *Lompton* v. *Collingwood*, (4 *Mod.* 315). And so when a judgment in debt is had against two, one of whom died, the plaintiff may proceed by *scire facias* against the survivor alone, so as to have execution of his personal property at least, though possibly not of his lands, in England, according to *Mr Williams's Note* (4), 2 *Saund.* 51, and the authorities there cited by him. But it was said, if the plaintiff brings a *scire facias* against both, and has judgment upon it, he may have a *fieri facias* against the survivor only, or an *elegit* against both. *Ibid.* In Pennsylvania, however, I am inclined to think that the plaintiff may proceed against the survivor alone, and take his lands in execution upon a *fieri facias*, if personal property cannot be found by the sheriff; for such has been the practice, I apprehend, time nearly if not altogether out of mind.

Upon the whole, we are satisfied, from the facts recited, and shown by the plaintiff himself in his *scire facias*, that he cannot maintain this suit, and that the court below was right in giving judgment against him upon the demurrer to the writ. Pleading in abatement, as suggested by the counsel for the plaintiff, was wholly unnecessary, for the plaintiff had set out and admitted, in the *scire facias* sued out by him, all the facts that were necessary, and that could have been pleaded either in abatement or in bar to his writ, for the purpose of showing that it could not be sustained.

Judgment affirmed.